UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for the benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2018-SB47, <br><br> Plaintiff, <br><br> -against- <br><br> JOEEFI LLC, THE ESTATE OF JOSEPH GOLDBERGER, EVA GOLDBERGER, BLUE WHALE EAST 182ND LLC, SHONY & G CORP.; CITY OF NEW YORK DEPARTMENT OF ENVIRONMENTAL CONTROL; and DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT, <br><br> Defendants. | 24-CV-3966 (VEC) (RFT) <br><br> **REPORT & RECOMMENDATION** |

**TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE:**

By Order of Reference dated April 4, 2025 (ECF 100), this matter was referred to me for a report and recommendation concerning the amount that should be awarded to Plaintiff U.S. Bank National Association ("Plaintiff" or "Lender") from Defendants Joeefi, LLC ("Borrower"); Eva Goldberger and the Estate of Joseph Goldberger (together, "Guarantors") (together, Lender and Guarantors are "Borrowing Defendants") in connection with Borrower's default on a loan by Plaintiff to Borrower. Having reviewed the parties' submissions, I respectfully recommend that Your Honor should enter a final judgment in favor of Plaintiff directing payment by Borrowing Defendants to Plaintiff in the amount of **$3,434,126.53**, consisting of: (a) the unpaid principal balance of **$2,429,749.04**, (b) protective advances of **$205,277.08**, (c) reasonable attorneys' fees and costs of **$133,805.25**, and (d) prejudgment interest of **$665,295.16**; plus

post-judgment interest at a rate calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered.

## FACTUAL BACKGROUND[1]

On September 14, 2017, after a series of transactions, Borrower – a limited liability company organized and existing under New York law, whose members are Guarantors, and which has title to real property located at 546 E 182nd Street, Bronx County, New York (the "Mortgaged Premises") – executed and delivered a Consolidated, Extended, Amended and Restated Note (the "Consolidated Note") in the principal sum ("Principal Amount") of $2,750,000.00. (*See* ECF 47, Am. Compl. ¶¶ 1, 3-4, 20.) Repayment of the Consolidated Note is secured by the Multifamily Mortgage, Assignment of Rents and Security Agreement (the "Consolidated Mortgage") executed by Borrower as mortgagor and Sabal Capital (the "Original Lender"). (*See id.* ¶¶ 1, 20-21.)

On the same day, Borrower and Original Lender executed a Loan Agreement (the "Loan Agreement"), and the Guarantors executed a Guaranty (the "Guaranty"), guaranteeing the Borrower's obligations under the Loan (*See id.* ¶¶ 21-23.) Original Lender assigned the Loan Agreement, Consolidated Note, and Consolidated Mortgage (collectively, the "Loan Documents") to Sabal TL1, LLC, which in turn assigned the Loan Documents to Federal Home Loan Mortgage Corporation. (*See id.* ¶¶ 24-26.) Federal Home Loan Mortgage Corporation assigned the Loan Documents to Plaintiff on or about March 27, 2018. (*See id.* ¶ 28.)

---

[1]      Unless otherwise indicated, I draw the facts relating to liability from the Amended Complaint (ECF 47, Am. Compl.) and the Plaintiff's Proposed Findings of Fact and Conclusions of Law (ECF 104).

Borrower defaulted under the Loan Documents by failing to make the monthly principal and/or interest payments (the "Monthly Debt Service Payment") on the first of the month (the "Payment Date") as required under Section 3(a) of the Consolidated Note. (*See id.* ¶ 32 (citing ECF 47-6, Consolidated Note at 4).) Specifically, Borrower failed to make any of the Monthly Debt Service Payments owed on December 1, 2023 or thereafter (the "Payment Defaults"), constituting an "Event of Default" under the Loan Documents. (*See* ECF 47, Am. Compl. ¶¶ 36-37.) Plaintiff sent Borrower a written Notice of Default on February 15, 2024, outlining the Payment Defaults and demanding their immediate cure. (*See id.* ¶ 38 (citing ECF 47-26, Notice of Default at 2-5).) On March 19, 2024, Plaintiff sent a second written Notice of Default in which it accelerated Borrower's indebtedness and demanded payment of the entire balance of the Loan. (*See* ECF 47, Am. Compl. ¶ 38 (citing ECF 47-26, Notice of Default at 6-10).)

## PROCEDURAL BACKGROUND

### I.    The Complaint

Plaintiff commenced this action on May 22, 2024 to foreclose on the Consolidated Mortgage encumbering the Mortgaged Premises. (*See* ECF 1, Compl.) On August 21, 2024, Plaintiff filed an Amended Complaint against Borrowing Defendants as well as Blue Whale East 182nd LLC ("Blue Whale"); Shony & G Corp. ("Shony & G"); the City of New York Department of Environmental Control ("NYCDEC"); the City of New York Department of Housing Preservation and Development ("NYCHPD"), and John Does 1-20. Blue Whale, Shony & G, the NYCDEC, the NYCHPD, and John Does 1-20 were named as defendants due to their possible claims or interests in possession of or liens against the Mortgaged Properties. (*See* ECF 47, Am. Compl. ¶¶ 3-11.) All named defendants were served with the summons, original complaint, and

exhibits 1-25 attached to the original complaint. (*See* ECF 20, Aff. of Serv. on Joeefi; ECF 27, Aff. of Serv. on Eva Goldberger in N.Y.; ECF 28, Aff. of Serv. on Eva Goldberger in Fla.; ECF 29, Aff. of Serv. on Est. of Joseph Goldberger in N.Y.; ECF 30, Aff. Of Serv. on Est. of Joseph Goldberger in Fla.; ECF 19, Aff. of Serv. on Blue Whale; ECF 23, Aff. of Serv. on Shony & G; ECF 21, Aff. of Serv. on NYCDEC; ECF 22, Aff. of Serv. on NYCDHP.)

On July 15, 2024, Plaintiff moved for appointment of a temporary receiver. (*See* ECF 31, Pl.'s Proposed Order; ECF 32, Pl.'s Mem. in Supp. of Mot. To Appoint Temp. Receiver.) On August 20, 2024, Your Honor appointed a temporary receiver for Borrower's assets. (*See* ECF 46.)

On September 10, 2024, Borrowing Defendants filed their answer. (*See* ECF 52.)

**II.     The Default and Summary Judgment**

Blue Whale, Shony & G, and NYCDEC (the "Defaulting Defendants") failed to appear, answer, or otherwise respond; NYHPD appeared but filed no responsive pleading. (*See* ECF 94, First Declaration of Mark S. Lichtenstein ("First Lichtenstein Decl.") ¶¶ 13, 17.) On January 29, 2025, the Clerk of Court issued Certificates of Default. (*See* ECF 85-88.) On February 14, 2025, Plaintiffs filed a motion for summary judgment against Borrowing Defendants and default judgment against the Defaulting Defendants and NYHPD. (*See* ECF 90, Pl.'s Mot. for Summ. J. and Default J.) Your Honor subsequently granted summary judgment and default judgment on April 4, 2025, struck Borrowing Defendants' answer from the docket, terminated John Doe 1-

4

20, and referred the case to me for a calculation of "the amount due to Plaintiff under the Loan Documents." (*See* ECF 99, Order; ECF 100, Order of Ref.)[2]

### III.    The Damages Inquest

On April 8, 2025, I issued a scheduling order directing Plaintiff to file its Proposed Findings of Fact and Conclusions of Law ("Proposed Findings") by April 29, 2025, and Defendants to file their responses, if any, by May 20, 2025. (*See* ECF 101, Inquest Order.) Plaintiff filed its Proposed Findings on April 29, 2025, (*see* ECF 104, Proposed Findings), along with supporting declarations and attached documents from Jamie Katilus and Mark S. Lichtenstein. (*See* ECF 105, First Declaration of Jamie Katilus ("First Katilus Decl."); ECF 106, Second Declaration of Mark S. Lichtenstein ("Second Lichtenstein Decl.").) In its Proposed Findings, Plaintiff sought recovery of the unpaid principal balance, interest at the contract and default rates, prepayment premiums, special servicing fees, late charges, liquidation fees, a demand and release fee, legal fees and costs, protective advances with interest thereon, prejudgment interest, and post-judgment interest. (*See* ECF 104, Proposed Findings ¶¶ 1-3.)[3] Plaintiff served its Proposed Findings, declarations, and my Inquest Order on Defaulting Defendants. (*See* ECF 107, Aff. of Serv. at 2.) Defaulting Defendants did not respond. Borrowing Defendants filed their opposition to Plaintiff's Proposed Findings on May 15, 2025. (ECF 108.)

On March 4, 2026, I issued an order directing Plaintiff to supplement its Proposed Findings with additional information on its entitlement to the prepayment premiums, special

---

[2]    Unless indicated otherwise, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

[3]    In its Proposed Facts, Plaintiff restarts its paragraph numbering on page 6. This citation refers to the second set of paragraphs labeled number 1-2.

servicing fees, liquidation fees, a demand and release fee, late charges, interest on the protective advances, and prejudgment interest, and on its relationship with Regions Bank. (*See* ECF 122, Order.) In response, Plaintiff filed a second declaration from Jamie Katilus on March 10, 2026, in which Plaintiff "agree[d] to waive its right to include" the prepayment premiums, special servicing fees, interest on protective advances, late charges, liquidation fees, and the demand and release fee in the final judgment. (*See* ECF 123, Second Declaration of Jamie Katilus ("Second Katilus Decl.") ¶¶ 10-11.))

None of the parties has requested a hearing on the issue of damages. I have conducted the inquest based on Plaintiff's Proposed Findings and supporting submissions and the Amended Complaint, which provide a sufficient basis on which to make a damages calculation. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (holding that Fed. R. Civ. P. 55(b)(2), which governs the determination of damages following default, permits, but does not require, a hearing); *De Lage Landen Fin. Servs., Inc. v. Universal Wilde, Inc.*, No. 19-CV-1371 (AT) (SDA), 2019 WL 4195441, at *3 n.2 (S.D.N.Y. Aug. 15, 2019) (finding that an inquest hearing was not required because the plaintiff's sworn declarations provided a sufficient basis for calculating damages), *report and recommendation adopted*, 2019 WL 4194574 (S.D.N.Y. Sep. 3, 2019).

Plaintiff seeks the following: (1) $2,429,749.04 for the unpaid principal balance; (2) $282,348.97 in interest that accrued at the contract rate from December 1, 2023 through April 30, 2025; (3) $175,835.45 in interest that accrued at the contract rate from May 1, 2025 through March 31, 2026; (4) $139,575.58 in interest that accrued at the default rate from December 1, 2023 through April 30, 2025; (5) $83,691.36 in interest that accrued at the default

6

rate from May 1, 2025 through March 6, 2026; (6) $161,527.75 for legal fees and costs; and (7)

$205,244.01 for protective advances. (*See* ECF 123, Second Katilus Decl. ¶¶ 7, 16-17.)

**DISCUSSION**

I.      **Legal Standard**

      A.      <u>Amounts Owed Under the Terms of a Defaulted Mortgage</u>

Pursuant to Section 1321 of the New York Real Property Actions and Proceedings Law,

after a court has granted summary judgment in favor of a plaintiff based on an undisputed

showing of default on a mortgage, the "trial court has the authority to compute the amount

owed or appoint a referee to do the same." *U.S. Bank Tr., N.A. v. Dingman*, No. 16-CV-1384

(CS), 2016 WL 6902480, at *4 (S.D.N.Y. Nov. 22, 2016) ("Although section 1321 contemplates a

situation where the defendant fails to answer or the right of the plaintiff is admitted, because

the Court granted summary judgment in favor of Plaintiff based on an undisputed showing of

default on the mortgage, the procedural posture of the case now is as if the right of Plaintiff has

been admitted."). An evidentiary hearing on the amount owed is not required, "so long as there

is a basis for the damages awarded"; "[d]etailed affidavits and other documentary evidence can

provide this basis." *Onewest Bank, N.A. v. Cole*, No. 14-CV-3078 (FB) (RER), 2015 WL 4429014,

at *3 (E.D.N.Y. July 17, 2015); *Kairos Credit Strategies Operating P'ship, LP v. Friars Nat'l Ass'n,*

*Inc.*, No. 23-CV-2960 (AS) (RFT), 2024 WL 3387319, at *3 (S.D.N.Y. June 10, 2024), *report and*

*recommendation adopted*, 2024 WL 3567681 (July 29, 2024). The amount owed should be

determined based on "the terms of the Notes and Mortgages." *E. Sav. Bank, FSB v. Rabito*, No.

11-CV-2501 (KAM) (VVP), 2014 WL 4804872, at *1 (E.D.N.Y. Sep. 10, 2014), *report and*

*recommendation adopted*, 2014 WL 4804901 (E.D.N.Y. Sep. 26, 2014).

7

B.    Attorneys' Fees and Costs

In assessing an application for attorneys' fees, courts award counsel the "presumptively

reasonable fee," which is calculated by multiplying the reasonable hourly rate by the number of

hours that were reasonably expended to litigate the action. *See Simmons v. N.Y.C. Transit Auth.*,

575 F.3d 170, 174 (2d Cir. 2009); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir.

2011). Fee awards typically include those reasonable out-of-pocket costs incurred by the

attorney, including for items such as "shipping, filing fees, process servers, and litigation

support." *HSBC Bank USA, N.A. v. PAKS Holdings, LLC*, No. 19-CV-10193 (PGG) (JLC), 2021 WL

667661, at *8 (S.D.N.Y. Feb. 22, 2021).

**II.    Analysis of Amounts Owed to Plaintiff Under the Terms of the Defaulted Mortgage**

I compute the amount owed to Plaintiff based on the documentary evidence it

submitted.[4] No Defendant has challenged my authority to perform this computation or

suggested that an evidentiary hearing is warranted.

A.    Outstanding Principal Balance

The principal amount originally owed under the Consolidated Note was $2,750,000.00.

(*See* ECF 105-8, Consolidated Note at 2.) Borrower made payments until its failure to pay on

December 1, 2023; that failure to pay was an Event of Default, after which the Outstanding

---

[4]    On the issue of damages, I rely on the well-supported factual statements contained in
the Declarations of Jamie Katilus (ECF 105, First Katilus Decl.; ECF 123, Second Katilus Decl.) and
Mark S. Lichtenstein (ECF 106, Second Lichtenstein Decl.) and their supporting attachments; I
also rely on Plaintiff's Proposed Findings (ECF 104). *See Lopez v. Emerald Staffing, Inc.,* No. 18-
CV-2788 (SLC), 2020 WL 915821, at *1 n.1 (S.D.N.Y. Feb. 26, 2020) (relying on and accepting as
true facts from the plaintiffs' proposed findings of fact and conclusions of law, the plaintiffs'
declarations, and the plaintiffs' complaint) (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir.
2009)).

Principal Balance became immediately due and payable. (*See id.* at 6.) The Outstanding

Principal Balance of **$2,429,749.04** remains unpaid. (*See* ECF 104, Proposed Findings ¶ 1; ECF

105, First Katilus Decl. ¶ 54.)[5]

        B.        <u>Property Protective Advances</u>

Plaintiff seeks $205,244.01 in protective advances ("Property Protective Advances"),

consisting of $126,901.59 in property taxes and fees; $53,176.54 in utilities; $7,500.00 in third-

party costs for consulting services, such as site assessment and appraisal; and $17,665.88 in

receiver fees. (*See* ECF 104, Proposed Findings ¶ 3; ECF 105, First Katilus Decl. ¶ 59 & Annex B

at 1; ECF 123, Second Katilus Decl. ¶ 7.)[6] Plaintiff may recover these types of costs under the

Consolidated Note, which provides that Borrower shall have the right to "be paid back by

Borrower for Lender's entire costs and expenses . . . resulting from any default under this

Note." (*See* ECF 105-8, Consolidated Note at 7.) Courts in this Circuit have permitted recovery of

Property Protective Advances upon plaintiffs' production of documentation supporting the

accuracy of the claimed protective advances. *See E. Sav. Bank, FSB v. Johnson*, No. 13-CV-6070

(AMD) (ST), 2022 WL 18858919, at *5 (E.D.N.Y. Dec. 27, 2022); *Wilmington Tr., Nat'l Ass'n v.*

*Winta Asset Mgmt. LLC*, No. 20-CV-5309 (JGK) (VF), 2023 WL 9603893, at *7 (S.D.N.Y. Dec. 21,

2023), *report and recommendation adopted*, 2024 WL 1700032 (S.D.N.Y. Apr. 18, 2024). I detail

Plaintiff's specific requests for recovery and the accompanying documentation below.

---

[5]      The citation to ECF 104 references the second paragraph labeled number 1.

[6]      The citation to ECF 104, Proposed Findings refers to the second paragraph labeled number 3.

Plaintiff claims to have paid a total of $126,901.59 in property taxes and fees; $53,176.54 in utilities; $7,500.00 in third-party costs; and $17,665.88 in receiver fees and costs for the Mortgaged Premises. (*See* ECF 105-2, Annex B at 1.) In its initial submission, Plaintiff provided supporting documentation in the form of emails between personnel at Regions Bank discussing and authorizing property tax payments, in addition to receipts for water bill payments, invoices for third-party costs addressed to Regions Bank, and billing records from counsel concerning the receivership. (*See generally id*.) In its supplemental submission, Plaintiff explains that Regions Bank is the parent company of SCP Servicing, Plaintiff's special servicer for the Loan, and is authorized to act on SCP Servicing's behalf. (*See* ECF 123, Second Katilus Decl. ¶¶ 21-22.)

This evidence is sufficient to substantiate Plaintiff's claimed amounts for paying property taxes, utility bills, third-party costs, and receiver fees and costs. *See, e.g., E. Sav. Bank*, 2014 WL 4804872, at *6 (finding that a plaintiff had submitted substantial documentation demonstrating the accuracy of the claimed amount due for protective advances by including an escrow advance schedule detailing payments made along with checks and invoices demonstrating proof of such payments). Specifically:

- Plaintiff claims $126,901.59 in property taxes and fees; this amount is supported by a series of emails discussing and authorizing three payments for property taxes owed on the Mortgaged Premises: (1) a payment of $43,160.42, discussed and approved on March 15, 2024 and March 18, 2024; (2) a payment of $41,663.94, discussed and approved on June 12, 2024; and (3) a payment of $42,077.23, discussed and approved on December 10, 2024 and December 11, 2024. (*See* ECF 105-2, Annex B at 3-8.)

- Plaintiff claims $53,176.54 in utility payments; this amount is supported by two receipts for water bill payments: one receipt dated March 22, 2024 for a payment of $21,048.79, and a second receipt dated July 11, 2024 for a payment of $32,127.75. (*See* ECF 105-2, Annex B at 10-11.)

10

- Plaintiff claims $7,500.00 in third-party costs; this amount is supported by a March 27, 2024 invoice from SVN Stora Realty Corp. for $500.00 for "BPO: 546 E 182nd St. New York, NY 10457"; a February 28, 2025 invoice from CBRE Valuation & Advisory Services for $4,000.00 for an "Appraisal Report" relating to the Mortgaged Premises; and a March 4, 2025 invoice from Thornburgh Consulting, Inc. for $3,000.00 for "Phase I Environmental Site Assessment" for the Mortgaged Properties. (*See* ECF 105-2, Annex B at 13-15.)

- Plaintiff claims $17,665.88 in receiver costs and fees; this amount appears to be a typo or reflect an error in addition. Plaintiff provides a series of billing invoices from Moritt Hock & Hamroff dated September 18, 2024 through April 4, 2025, totaling $17,698.95 in receiver costs and fees. (*See* ECF 105-2, Annex B at 39.)

Based on the foregoing, I find that Plaintiff has sufficiently demonstrated its entitlement to **$205,277.08** for Property Protective Advances, including property taxes, utilities, third-party costs, and receiver fees.[7]

### C.    Legal Fees and Costs

Plaintiff seeks $161,527.75 for attorneys' fees and costs incurred from March 5, 2024 through April 29, 2025 for 267.4 hours of work, as set forth in the declaration of its counsel, Mark S. Lichtenstein. (*See* ECF 104, Proposed Findings ¶ 2; ECF 105, Katilus Decl. ¶¶ 57-58; ECF 106, Lichenstein Decl. ¶ 9; ECF 123, Second Katilus Decl. ¶ 7.)[8] Plaintiff also seeks $152,441.50 in attorneys' fees and $9,086.25 in legal costs. (*See* ECF 104, Proposed Findings ¶ 2; ECF 105, First Katilus Decl. ¶ 58; ECF 123, Second Katilus Decl. ¶ 7.) Plaintiff may recover attorneys' fees and costs under the Consolidated Note, which provides that Borrower shall have the right to "be paid back by Borrower for Lender's entire costs and expenses, including Attorneys' Fees

---

[7]    This amount (not $205,244.01, as stated by Plaintiff in paragraph 7 of the Second Katilus Declaration (ECF 123), which appears to be a typo or reflect an error in addition) is the sum of the amounts that Plaintiff indicated it spent on property taxes, utility bills, third-party costs, and receiver fees.

[8]    The citation to ECF 104 references the second paragraph labeled number 2.

and Costs, resulting from any default under this Note." (*See* ECF 105-8, Consolidated Note at 7.) Plaintiff supports its request for attorneys' fees and costs with the declaration from counsel and invoices for legal fees and costs incurred from March 2024 through April 2025. (*See* ECF 106, Lichtenstein Decl. & Ex. A, "Billing Records.")

As noted in Your Honor's Opinion and Order granting summary judgment and default judgment (ECF 99), the Loan Documents contain several provisions entitling Plaintiff to recover attorneys' fees and costs. Section 8.03(a) of the Loan Agreement provides that in the event of a default, the "Lender may exercise any or all of its rights and remedies provided under the Loan Documents and Borrower will pay all associated costs, including Attorneys' Fees and Costs." (*See* ECF 105-11, Loan Agreement Pt. II at 11.) Section 31(c) of the Consolidated Mortgage provides that the "Lender will be entitled to collect all costs and expenses allowed by New York law, including Attorneys' Fees and Costs." (*See* ECF 105-9, Consolidated Mortgage at 33.) Moreover, Section 3(a)(iv) obligates the Guarantors to pay "[a]ll costs and expenses, including reasonable Attorneys' Fees and Costs, incurred by Lender in enforcing its rights under this Guaranty." (*See* ECF 105-12, Guaranty at 1.)

The Borrowing Defendants contest the reasonableness of Plaintiff's fee request and deny Guarantors' liability for legal fees under the Guaranty. (*See* ECF 108, Borrowing Defs.' Opp. at 2-6.) Regarding Plaintiff's fee request, the Borrowing Defendants challenge the blended hourly rates of the billing associate and paralegal and characterize this matter as a "plain-vanilla foreclosure action" not warranting 267.4 hours of work. (*See id.* at 2-4.) Borrowing Defendants also argue that the Guaranty limits Guarantor's obligation for attorneys' fees to those incurred by Plaintiff in recovering amounts for which the Borrower is personally liable. (*See id.* at 6.)

12

Borrowing Defendants dispute Borrower's personal liability for any indebtedness and therefore conclude that Plaintiff cannot recover attorneys' fees from Guarantors. (*See id.*)

      1.   Plaintiff's Fee Request

Plaintiff seeks reimbursement for the fees of two partners, Keith E. Blackman and Mark S. Lichtenstein; one associate, Ethan K. Anderson; and one paralegal, Reyko E. Delpino, for their work in connection with this litigation; these individuals performed a total of 267.4 hours on Plaintiff's matter and billed a total of $152,441.50 in fees from March 5, 2024 through April 29, 2025. (*See* ECF 106, Lichtenstein Decl. ¶ 9.) The partners, Keith E. Blackman and Mark S. Lichtenstein, billed at blended hourly rates of $625.00 and 695.00, respectively, and logged a combined 126.5 hours; the associate, Ethan K. Anderson, billed at a blended hourly rate of $530.57 and logged 79.5 hours; and the paralegal, Reyko E. Delpino, billed at a blended hourly rate of $475.98 and logged 61.4 hours. (*See id.*) Keith E. Blackman was the partner who spent the most time on this matter, billing for 98.3 hours of work at $625.00 an hour. (*See id.*) Ethan K. Anderson and Reyko E. Delpino are the only associate and paralegal, respectively, listed as billing timekeepers on Plaintiff's matter. (*See id.*)

      a.   Hourly Rates

In considering the reasonableness of the hourly rate, a court's analysis is guided by the prevailing market rate for similar services. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Courts also consider factors including the attorneys' experience, reputation, and ability; the time, labor, and skill required; the novelty and complexity of the legal issues posed; awards in similar cases; and degree of success. *See Agudath Isr. of Am., v. Hochul*, No. 22-38, 2023 WL 2637344, at *2 n.2 (2d Cir. Mar. 27, 2023).

13

Upon reviewing Plaintiff's declaration in support of its claimed attorneys' fees (*see* ECF 106, Second Lichtenstein Decl.), I conclude that the hourly rates for the partners who worked on this matter were reasonable and commensurate with rates approved by Courts in the District for similar services by attorneys with similar experience. *See, e.g., Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). The blended hourly rates for the two partners ranged from $625 to $695. (*See* ECF 107, Lichtenstein Decl. ¶ 9.) Courts in this District routinely permit comparable hourly rates for partners engaged in foreclosure actions and complex commercial litigation. *See, e.g., Winta Asset Mgmt.,* 2023 WL 9603893, at *9 (awarding hourly rates ranging from $525.00 to $860.00 for partner-level work in a commercial foreclosure and subsequent default action); *Wells Fargo Bank as Tr. for the Benefit of the Holders of COMM 2015-LC19 Mortg. Tr. Comm. Mortg. Pass-Through Certificates v. 5615 N. LLC,* No. 20-CV-2048 (VSB) (KHP), 2023 WL 7394340, at *8 (S.D.N.Y. May 4, 2023) ("*5615 N.*") (allowing recovery of an average partner hourly rate of $606.81 in a foreclosure action); *UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2021 WL 3292519, at *6 (S.D.N.Y. Aug. 2, 2021) (approving partners' hourly rates of up to $1,030 in a complex bankruptcy and commercial litigation involving sophisticated commercial actors). Moreover, both partners who worked on this matter have extensive experience practicing law, with the lead partner having been admitted to the New York bar in 1992. (*See* ECF 106, Lichtenstein Decl. ¶¶ 10-11.)

However, Plaintiff's requested hourly rate for its billing associate should be reduced in accordance with foreclosure caselaw and the associate's level of experience. Courts in this District regularly award hourly rates ranging from $395.00 to $545.00 for associates working on foreclosure matters. *See, e.g., U.S. Bank Tr. Co., Nat'l Assn. as Tr. for the Benefit of the*

14

*Certificate Holders of Natixis Com. Mortg. Securities Trust 2022-Jeri, Com. Mortg. Passthrough Certificates Series 2022-Jeri v. Jericho Plaza Portfolio LLC,* No. 24-CV-0917 (PAE) (RFT), 2026 WL 476134, at *10 (S.D.N.Y. Jan. 30, 2026) (concluding that associate hourly rates ranging from $415 to $495 were reasonable in a foreclosure action), *report and recommendation adopted,* 2026 WL 475059 (S.D.N.Y. Feb. 19, 2026); *RSS WFCM2018-C44-NY LOD, LLC v. 1442 Lexington Operating DE LLC,* No. 21-CV-4424 (DLC) (VF), 2024 WL 4486058, at *7 (S.D.N.Y. Aug. 19, 2024) (awarding associate hourly rates from $395 to $485 in a foreclosure action), *report and recommendation adopted*, 2024 WL 4132554 (S.D.N.Y. Sep. 10, 2024); *5615 N.,* 2023 WL 7394340, at *8 (approving an average hourly rate of $454.48 for associates working on a foreclosure matter); *Winta Asset Mgmt.,* 2023 WL 9603893, at *9 (reducing a senior associate's hourly rate from $645 to $545 and allowing another associate to bill $393 per hour).

Here, Plaintiff seeks a blended hourly rate of $530.57 for its billing associate, Ethan K. Anderson. (*See* ECF 106-1, Billing Records ¶ 9.) Anderson began practicing law in 2024, making him a junior associate when he billed on this matter from April 2024 through January 2025. (*See* ECF 106, Lichtenstein Declaration ¶ 12; ECF 106-1, Billing Records at 7, 54.) In addition to the average associate hourly rates in foreclosure actions, I am mindful of this Court's guidance on reasonable rates for junior associates involved in commercial litigation. *See, e.g., Access Bio, Inc. v. Div. 5 Labs, Inc.,* No. 23-CV-4820 (LGS), 2024 WL 3084990, at *3 (S.D.N.Y. June 20, 2024) ("Reasonable rates for junior attorneys involved in commercial litigation in this district are typically less than $350, even at large firms."). Given Anderson's level of experience and the accepted hourly rates for junior associates practicing in this District, I respectfully recommend reducing his hourly rate to $395.

Likewise, the requested hourly rate for the billing paralegal is too high. While the billing paralegal, Reyko E. Delpino, has more than 37 years of experience (*see* ECF 106, Lichtenstein Decl. ¶ 13), Courts in this District routinely cap hourly rates for paralegals at $200. *See, e.g., Carrington v. Garden*, No. 18-CV-4609 (KPF), 2020 WL 5758916, at *14 (S.D.N.Y. Sept. 28, 2020) (finding that courts typically cap paralegal rates at $200 per hour even for experienced paralegals); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16-CV- 5766 (JSR), 2018 WL 3104631, at *7 (S.D.N.Y. May 24, 2018) (reducing hourly rates of paralegals with more than ten years of relevant experience to $200 per hour). Accordingly, I respectfully recommend reducing the paralegal hourly rate to $200.

### b. Number of Hours Expended

I have reviewed the Billing Records and believe that the amount of time spent on this matter was reasonable. The time entries are clear and substantive, and they demonstrate that Plaintiff's counsel expended 267.4 hours of work litigating this action by drafting and revising the complaint, various declarations, discovery documents, and the summary judgment papers, along with other documents, motions, and client communications. (*See generally* ECF 106-1, Billing Records.) A total time expenditure of 267.4 hours is consistent with the time spent in other foreclosure matters in which attorneys' fees have been approved in this District. *See, e.g., RSS WFCM2018-C44-NY LOD*, 2024 WL 4486058, at *6-7 (approving 512.1 hours billed in an action for judgment of foreclosure and sale for work on pleadings, appointment of receiver, and motion for summary judgment); *5615 N.*, 2023 WL 7394340, at *8 (approving 342.3 hours billed in an action for judgment of foreclosure and sale for work on pleadings, appointment of a receiver, responding to the defendant's motion to dismiss, briefing a motion for summary

judgment, and attempting settlement); *cf. UMB Bank, Nat'l Ass'n*, 2021 WL 3292519, at *7 (finding that that it was reasonable for counsel to have spent 539.7 hours on a summary judgment motion for a bankruptcy and commercial action involving defaulted payments on a promissory note); *Knight MPIC Ventures, LLC v. Higginson*, No. 18-CV-8126 (LGS) (KNF), 2020 WL 4676817, at *3 (S.D.N.Y. Aug. 12, 2020) (finding 569.2 hours reasonable for work on a motion for summary judgment in a breach of guarantee action resulting from the borrowers' default). I also conclude that all these litigation efforts were reasonable undertakings. *See, e.g., Winta Asset Mgmt.,* 2023 WL 9603893, at *10 (S.D.N.Y. Dec. 21, 2023) (allowing for recovery of attorneys' fees where counsel spent an appropriate time litigating the action by seeking the appointment of a receiver and briefing a motion for summary judgment).

Borrowing Defendants fail to offer any reasoned explanation for their claim that this is a "plain-vanilla foreclosure action" for which Plaintiff's fee request "truly shocks the conscience." (*See* ECF 108, Borrowing Defs.' Opp. at 2.) Borrowing Defendants do not cite any case for the proposition that Plaintiff's counsel spent an unreasonable amount of time litigating this matter, nor do they otherwise articulate any concrete problems with the Billing Records, such as overstaffing or block billing. (*See id.*) Borrowing Defendants' vague accusations of Plaintiff's fee request being "beyond the pale" are insufficient to show that Plaintiff's counsel spent too much time on this matter. (*See id.*) As such, Borrowing Defendants have not persuaded me that Plaintiff's counsel billed for an unreasonable amount of time for this litigation.

### c. Guarantor's Liability for Attorneys' Fees

Borrowing Defendants also dispute Guarantors' liability for attorneys' fees under Section 3(a) of the Guaranty, which obligates Guarantors to pay "all amounts for which

Borrower is personally liable" and allows recovery of legal fees and costs incurred by Lender in enforcing the Guaranty. (*See* ECF 108, Borrowing Defs.' Opp. at 4-6 (citing ECF 105-12, Guaranty at 1.)) Borrowing Defendants assert that Article III of the Loan Agreement limits Borrower's personal liability to certain circumstances that have not been met, rendering the Guaranty unenforceable and precluding Lender from collecting attorneys' fees from the Guarantors. (*See* ECF 108, Borrowing Defs.' Opp. at 4-6.) While the Borrowing Defendants are correct that Section 3.01 of the Loan Agreement limits Borrower's personal liability, such liability has been triggered by Borrower's failure to pay property taxes and water bills. (*See* ECF 105-10, Loan Agreement Pt. I at 3; ECF 105-2, Annex B at 3-11.) Section 3.03(e) of the Loan Agreement expressly provides that Borrower will be held personally liable if it fails to pay taxes where Lender does not collect a Tax Reserve Fund, or if Borrower fails to pay water or sewer charges that could become a lien on the Mortgaged Properties. (*See* ECF 105-10, Loan Agreement Pt. I at 3.) In support of its Proposed Findings, Lender submits emails and receipts demonstrating that Borrower failed to pay its property taxes and water bills on the Mortgaged Properties in 2024. (*See* ECF 105-2, Annex B at 3-11.) To the extent that Borrower is personally liable for its unpaid property taxes and water bills, Guarantors are obligated to pay these amounts under the Guaranty (*see* ECF 105-12, Guaranty at 1); therefore, Lender is permitted to enforce the Guaranty against Guarantors and recover attorneys' fees accordingly. Additionally, Your Honor specifically concluded in the Opinion and Order on the motion for summary judgment and default judgment that Borrowing Defendants are liable for Plaintiff's attorneys' fees. (*See* ECF 98, Opinion and Order at 8.) As such, I respectfully recommend that Guarantors be held liable for the attorneys' fees incurred in enforcing the Guaranty.

### d. Reasonable Attorneys' Fees

Based on the foregoing analysis, I respectfully recommend that Your Honor should award attorneys' fees in the amount of **$124,719.00**, as calculated in the table below:

| Timekeeper | Position | Requested Rates | Reasonable Rates | Hours Billed | Reasonable Hours | Requested Fees (Requested Rates x Billed Hours) | Reasonable Fees (Reasonable Rates x Reasonable Hours) |
|---|---|---|---|---|---|---|---|
| Mark Lichtenstein | Partner | $695.00 | $695.00 | 28.2 | 28.2 | $19,599.00 | $19,599.00 |
| Keith Blackman | Partner | $625.00 | $625.00 | 98.3 | 98.3 | $61,437.50 | $61,437.50 |
| Ethan Anderson | Associate | $530.57 | $395.00 | 79.5 | 79.5 | $42,180.00 | $31,402.50 |
| Reyko Delpino | Paralegal | $475.98 | $200.00 | 61.4 | 61.4 | $29,225.00 | $12,280.00 |
| **TOTAL** | | | | **267.4** | **267.4** | **$152,441.50** | **$124,719.00** |

### e. Reasonable Costs

Plaintiff seeks $9,086.25 for reimbursement of legal costs, including: $756.68 for a foreclosure title search; $2,340.00 in filing fees; $5,453.00 in Westlaw and other research fees; $446.47 in postage fees; and $90.10 in PACER and other miscellaneous digital court records fees. (*See* ECF 106-1, Billing Records at 3, 7, 11-12, 16-17, 21-23, 27-29, 33-35, 39-40, 44, 48, 52-53, 57-58, 62, 66-67.) These are the kinds of costs for which courts routinely allow recovery. *See, e.g., HSBC Bank USA, N.A. v. PAKS Holdings, LLC,* No. 19-CV-10193, 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021) (allowing recovery of costs for shipping, filing, and "litigation support"). In addition to the invoices it provides, Plaintiff also supplies a declaration from counsel, Mark S. Lichtenstein, who avers that the requested $9,086.25 in costs were incurred as part of Plaintiff's representation in this matter. (*See* ECF 106, Lichtenstein Decl. ¶¶ 9, 21.) This record is sufficient to allow Plaintiff to recover its requested reimbursement for costs incurred in this

19

litigation. *See HSBC Bank USA, N.A.,* 2021 WL 667661, at *8 (granting recovery for legal costs

based on a declaration submitted by counsel). Accordingly, I respectfully recommend that

Plaintiff be allowed to recover **$9,086.25** in costs in connection with this action.

*****

Based on the foregoing analysis, I conclude that Plaintiff is entitled to recover

**$205,277.08** in Property Protective Advances and **$133,805.25** in attorneys' fees and costs in

connection with this action.

D.    Accumulated Interest

The Consolidated Note divides the Loan Term into two distinct periods for purposes of

calculating interest: the Fixed Rate Period, which began upon execution of the Loan Documents

and terminated on September 30, 2022, during which interest accrued on the outstanding

Principal Amount at an annual rate of 3.660%; and the Floating Rate Period, effective October

1, 2022, during which interest accrues on the outstanding Principal Amount at the Variable

Annual Interest Rate, calculated by summing the Index and the Margin, as defined in the

Consolidated Note. (*See* ECF 105-8, Consolidated Note at 2.) Under Sections 1 and 2(d)(ii) of the

Consolidated Note, the Index is the 6-month London Interbank Offered Rate as of the most

recent "Change Date." (*See id.* at 3.)[9] Under Section 1 of the Consolidated Note, the Change

Date is updated on the first day of every sixth month following the initial change date, October

---

[9]    The London Interbank Offered Rate was discontinued as of October 1, 2024. *See The End of LIBOR*, BANK OF ENGLAND, *https://www.bankofengland.co.uk/news/2024/october/the-end-of-libor* (last visited on Mar. 16, 2026). Section 2(d)(ii) of the Consolidated Note provides that if the London Interbank Offered Rate is no longer available, Lender will select a new Index based on comparable information and give Borrower notice of the updated Index. (*See* ECF 105-8, Consolidated Note at 3.)

20

1, 2022. (*See id.* at 2.) The Consolidated Note defines the Margin as 3.25%. (*See id.*) The Variable Annual Interest Rate cannot be less than 3.660% or more than 8.660%. (*See id.* at 4.)

Pursuant to Section 5(b) of the Consolidated Note, if Lender has not received the full amount of a Monthly Debt Service Payment for 30 days or more after the Payment Date, the interest rate will "increase to" the Variable Annual Interest Rate plus an additional 4 percentage points (the "Default Annual Interest Rate"). (*See* ECF 105-8, Consolidated Note at 6.) The Default Annual Interest Rate takes effect on the Payment Date upon which the Event of Default begins; thus, the Default Annual Interest Rate took effect on December 1, 2023, which was the day that the Event of Default began. (*See id.*; ECF 105, First Katilus Decl. ¶ 48.)

1. Unpaid Interest at the Contract Rate

Plaintiff seeks $282,348.97 for unpaid contract rate interest that accrued from December 1, 2023 through April 30, 2025, and an additional $175,835.45 for unpaid contract rate interest that accrued from May 1, 2025 through March 6, 2026. (*See* ECF 123, Second Katilus Decl. ¶¶ 7, 14-16.) Borrower, Guarantors, and the Defaulting Defendants do not contest these requests, but the Court maintains the authority to conduct its own calculations to assess the reasonableness of the requests. *See, e.g., Fed. Nat'l Mortg. Ass'n v. 2120 Tiebout LLC*, No. 23-CV-9445 (DEH), 2025 WL 1503957, at *7 (S.D.N.Y. May 27, 2025) ("Under Section 1321 of the New York Real Property Actions and Proceedings Law, after a court has granted summary judgment in favor of a plaintiff based on an undisputed showing of default on a mortgage, the trial court has the authority to compute the amount owed . . . ."); *Kairos Credit Strategies Operating P'ship*, 2024 WL 3387319, at *3 (same); *Dingman*, 2016 WL 6902480, at *3-4 ("Although section 1321 contemplates a situation where the defendant fails to answer or the

21

right of the plaintiff is admitted, because the Court granted summary judgment in favor of Plaintiff based on an undisputed showing of default on the mortgage, the procedural posture of the case now is as if the right of Plaintiff has been admitted.").

Plaintiff initially supported its claim for unpaid contract rate interest with the first declaration from Jamie Katilus, who asserted that under Section 5(b) of the Consolidated Note, Plaintiff is entitled to recover accrued contract interest at either the Fixed Annual Interest Rate or the Variable Annual Interest Rate. (*See* ECF 105, First Katilus Decl. ¶ 55.) Katilus estimated that as of April 30, 2025, Plaintiff was entitled to $282,348.97 in contract rate interest. (*See id.*) After I issued an order to supplement their Proposed Findings, Plaintiff provided a second declaration from Katilus, who acknowledged errors in Plaintiff's initial interest calculation, provided an amortization table for accruing contract rate interest through the term of the Loan, and concluded that Plaintiff is entitled to a combined $458,184.42 in contract rate interest through March 31, 2026 pursuant to Section 5(b) of the Consolidated Note. (*See* ECF 123, Second Katilus Decl. ¶¶ 13-16.)

Section 1 of the Consolidated Note provides that the operative contract interest rate is the Variable Annual Interest Rate, calculated by adding the Index (the London Interbank Offered Rate) and the Margin (3.25%). (*See* ECF 105-8, Consolidated Note at 1-3.) Here, determining the Variable Annual Interest Rate is complicated by the discontinuance of the London Interbank Offered Rate, and Plaintiff's subsequent failure to articulate the new comparable index it sought to use in calculating the Variable Annual Interest Rate, as mandated by Section 2(d)(ii) of the Consolidated Note. (*See* ECF 105-8, Consolidated Note at 3.)

22

Nevertheless, I am able to substantially replicate Plaintiff's calculations of contract rate interest. Plaintiff appears to have used the interest formula articulated in Section 2(c)(i) of the Consolidated Note, which calculates the contract rate interest for each month by multiplying the existing unpaid Principal Amount with the interest rate, dividing the product by 360, and then multiplying the quotient by the number of days in the month at issue. (*See id.*) Based on the amortization table that Plaintiff provided as an exhibit to the Second Katilus Declaration, the I conclude that Plaintiff is entitled to **$442,048.22** in contract rate interest, which accrued from December 1, 2023 through March 31, 2026.

2.    Unpaid Interest at the Default Rate

In addition, Plaintiff seeks $139,575.58 for unpaid default rate interest accruing from December 1, 2023 through April 30, 2025, and an additional $83,691.36 for unpaid default rate interest accruing from May 1, 2025 through March 6, 2026. (*See* ECF 123, Second Katilus Decl. ¶¶ 7, 14-15, 17.) As to its basis for recovery, Plaintiff provides the two declarations from Jamie Katilus and indicates that the default rate interest has accrued at a rate of 4% per annum pursuant to Section 5(b) of the Consolidated Note. (*See id.* ¶ 16 (citing ECF 105-8, Consolidated Note at 6); ECF 105, First Katilus Decl. ¶ 55.)

As discussed above, Section 5(b) provides that once an Event of Default has occurred, the operative interest rate under the Consolidated Note becomes the Variable Annual Interest Rate plus an additional 4 percentage points. (*See* ECF 105-8, Consolidated Note at 6.) It appears that Plaintiff took the unpaid principal balance at the time of Borrower's default, $2,429,749.04, and multiplied it by .04 for a total of $97,189.96 of annual default rate interest. Then, following the interest calculation formula provided in Section 2(c)(i) of the Consolidated

Note, Plaintiff divided the annual default rate interest by 360, for a rounded total of $269.97 of daily interest. (*See* ECF 105-8, Consolidated Note at 3.) Plaintiff multiplied $269.97 by the number of days in every month during the period for which Plaintiff seeks default interest. (*See id.*) Plaintiff calculated a total of $139,575.58 of default rate interest from December 1, 2023 through April 30, 2025, and $83,691.36 for May 1, 2025 through March 6, 2026. (*See* ECF 123, Second Katilus Decl. ¶¶ 7, 17.) I conclude that Plaintiff is entitled to recover **$223,266.94** in default rate interest that accrued from December 1, 2023 through March 6, 2026.

### 3. Post-Judgment Interest

Post-judgment interest is mandatory in federal civil actions: "[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, post-judgment interest should be granted to Plaintiff and calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (holding that post-judgment interest is mandatory and calculated pursuant to federal statute); *Builders Bank v. N. Funding, LLC*, No. 08-CV-3575 (MDG), 2012 WL 4928854, at *1 (E.D.N.Y. Oct. 16, 2012) (awarding post-judgment interest at the federal statutory rate in an action for a judgment of foreclosure and sale).

**<u>CONCLUSION</u>**

For the foregoing reasons, I respectfully recommend:

(1) That a final judgment be entered in favor of Plaintiff directing payment to Plaintiff by Borrowing Defendants in the amount of **$3,434,126.53**, plus post-judgment interest at a

rate calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered. The **$3,434,126.53** is the sum of the following amounts:

    (a)  The unpaid principal balance of **$2,429,749.04**;

    (b)  Protective advances in the amount of **$205,277.08**;

    (c)  Attorneys' fees and legal costs in the amount of **$133,805.25**; and

    (d)  Prejudgment interest in the amount of **$665,295.16**.

DATED:      March 18, 2026
           New York, New York

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this report and recommendation. Plaintiff shall promptly serve a copy of this report and recommendation on Defendants by mail and email at Defendants' last known addresses and shall file proof of such service on the docket on the day such service is made. A party may respond to another party's objections within fourteen days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C.

25

§ 636(b)(1); Fed. R. Civ. P. 72(b). Any objections by Plaintiff shall be served on Defendants on the same day the objections are filed with the Clerk of Court, with proof of service to be filed on the docket within two business days. Any requests for an extension of time for filing objections must be addressed to Judge Caproni.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).